IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

TAMARIS (GIBRALTAR) LIMITED,    )
    )
        Plaintiff,    )
    )
v.    )    Civil Action No. 1:24-cv-748 PTG/IDD
    )
AMPPRAGMATICPLAY.COM, *et al.*,    )
    )
        Defendants.    )
_____    )

## REPORT AND RECOMMENDATION

This matter is before the Court on a Motion for Default Judgment ("Motion") by Plaintiff Tamaris (Gibraltar) Limited, operating as Pragmatic Play ("Plaintiff" or "Pragmatic Play"), against Defendants AMPPRAGMATICPLAY.COM, ASIA-PRAGMATICPLAY.COM, CHEATPRAGMATICPLAY.COM, CHEATSLOTPRAGMATICPLAYS.COM, CK20-PRAGMATICPLAY.NET, DK11-PRAGMATICPLAY.NET, GS10-PRAGMATICPLAY.COM, GS10-PRAGMATICPLAY.NET, HACKPRAGMATICPLAYPRO.COM, JACKPOTPLAYPRAGMATICPLAY.NET, JURAGANPRAGMATICPLAY.COM, LINKPRAGMATICPLAY.NET, LIVE777SLOTPRAGMATICPLAY.COM, MAHJONGWINSPRAGMATICPLAY.COM, PRAGMATIC-PLAY.NET, PRAGMATICPLAY88.COM, PRAGMATIC-PLAYS.COM, PRAGMATIC-PLAYS.NET, PRAGMATICHOTPLAY888.COM, PRAGMATICPLAY1.COM, PRAGMATICPLAY100.ORG, PRAGMATICPLAY168.COM, PRAGMATICPLAY2024.COM, PRAGMATICPLAY24.COM, PRAGMATICPLAY356.COM, PRAGMATICPLAY4D.COM, PRAGMATICPLAY98.COM, PRAGMATICPLAY999.COM,

1

PRAGMATICPLAY99SLOT.COM, PRAGMATICPLAYA.COM, PRAGMATICPLAYCASINO365.COM, PRAGMATICPLAYFRIENDS.COM, PRAGMATICPLAYGACORSLOT.COM, PRAGMATICPLAYJ.COM, PRAGMATICPLAYLOTTERY.COM, PRAGMATICPLAYMALAYSIA.COM, PRAGMATICPLAYMMK.COM, PRAGMATICPLAYMY.COM, PRAGMATICPLAYMYANMAR.COM, PRAGMATICPLAYOYNA.NET, PRAGMATICPLAYP.COM, PRAGMATICPLAYPHP.COM, PRAGMATICPLAYPUSAT.COM, PRAGMATICPLAYQ.COM, PRAGMATICPLAYSLOT365.NET, PRAGMATICPLAYTRIOFUS.COM, PRAGMATICPLAYTRIOFUS.NET, PRAGMATICPLAYTRIOFUS.ORG, PRAGMATICPLAYX500.COM, PRAGMATICPLAYYY.COM, PROGMATICPLAY.NET, QQPRAGMATICPLAY.COM, RAJAPRAGMATICPLAY.COM, RATUPRAGMATICPLAY.COM, RTPLIVEPRAGMATICPLAY.ORG, SDK11-PRAGMATICPLAY.NET, SLOTDEMOPRAGMATICPLAY.COM, SLOTGACORPRAGMATICPLAY88.COM, SLOTOLYMPUSPRAGMATICPLAY.COM, SLOTPRAGMATICPLAYVITTON.COM, SUGAR-RUSH-PRAGMATIC-PLAY.COM, and VIPPRAGMATICPLAY.COM. ("Domain Names" or collectively "Defendants"). Dkt. No. 11. After Defendants failed to file an answer, plead, or otherwise defend this action, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. Upon consideration of the Complaint, Plaintiff's Motion for Default Judgment, the supporting memorandum, and relevant portions of the underlying record, the undersigned Magistrate Judge makes the following findings and recommends that Plaintiff's Motion be **GRANTED**.

## I. **INTRODUCTION**

On May 3, 2024, Plaintiff filed its complaint for *in rem* relief against sixty-two (62) domain names. Dkt. No. 1. Plaintiff brings one count of Trademark Cyberpiracy against the Defendant Domain Names, pursuant to the Federal Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). *Id.* As relief, Plaintiff seeks judgment in its favor on its cybersquatting claim. Compl. at 32; Mot. for Default J. Further, Plaintiff seeks an order: (i) directing VeriSign, Inc. and Public Interest Registry to change the registrars of record for the Defendant Domain Names to Plaintiff's domain name registrar of choice, SafeNames Ltd., (ii) directing SafeNames Ltd. to take all necessary steps to have Plaintiff listed as the registrant for the Defendant Domain Names, and (iii) providing such further relief as the Court determines just and proper. Compl. at 32; Mot. for Default J.

### A. **Jurisdiction and Venue**

For a court to render a default judgment against a party, it must have (1) subject matter jurisdiction, (2) personal or *in rem* jurisdiction, and (3) be the appropriate venue for the action.

This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 and § 1338(a), because this case involves a federal question arising under the ACPA (15 U.S.C. § 1121(a)). *See* Compl. ¶ 69; Mem. in Support of Mot. for Default J. ¶ 6.

This court has *in rem* jurisdiction over the Domain Names, pursuant to 15 U.S.C. § 1125(d)(2)(A), which permits the owner of a mark to file an *in rem* action against a domain name in the judicial district in which the domain name registrar is located, if two requisite elements are satisfied. As a preliminary matter, however, it must be established that the *in rem* action has been filed in the district in which the domain name registrar is located. The domain name registry operator for all ".net" and ".com" domain names, including the Defendant Domain Names, is

Verisign Global Registry Services ("Verisign"), which is located within this judicial district. Mem. in Supp. of Mot. for Default J. at 6-7. Similarly, the domain name registry operator for all ".org" domain names, including the Defendant Domain Names, is Public Interest Registry, which is also located within this judicial district. *Id.* Thus, the undersigned finds that the *in rem* action has been properly filed in the district in which the domain name registrars are located.

Under 15 U.S.C. § 1125(d)(2)(A)(i), the first element required for an *in rem* action over a domain name is that the domain name must violate a plaintiff's trademark rights. Here, Plaintiff's Complaint alleges that Plaintiff is the rightful owner of the PRAGMATIC PLAY mark, and that the Defendant Domain Names infringe upon its mark. Compl. ¶¶ 4, 74-106. By failing to answer the Complaint, the Defendant Domain Names have admitted the truth of the factual allegations contained therein. Therefore, the first requisite element, pursuant 15 U.S.C. § 1125(d)(2)(A), is satisfied.

As to the second element, the court must find that the trademark owner: (1) is unable to obtain *in personam* jurisdiction over a person liable for the infringement, or (2) through due diligence is unable to find a person liable for the infringement. *See* 15 U.S.C. § 1125(d)(2)(A)(ii). Due diligence requires that the plaintiff: (aa) send a notice of the alleged violation and intent to sue to the registrant of the domain name at the postal and e-mail address provided by the registrant and (bb) publish a notice of the action as the court may direct. *Id.*

Here, the undersigned finds that Plaintiff has sufficiently alleged that it is unable to obtain personal jurisdiction over the registrant of the Defendant Domain Names because the registrants have actively sought to conceal their identities. Compl. ¶¶ 5-67, 99; Dkt. Nos. 1-1 to 1-62. According to the WhoIs registration records for the Domain Names, the Domain Name registrants use privacy services—including Domains by Proxy, LLC, Withheld for Privacy ehf, and Privacy

4

Guardian, LLC—which replace a domain name owner's contact information with names such as "REDACTED FOR PRIVACY," or the WhoIs records contain no registrant name field altogether, thereby concealing the identity of the true owner(s) of the domain name. Compl. ¶¶ 5-67; 99. Therefore, the undersigned finds that the Plaintiff has sufficiently demonstrated that it is unable to obtain *in personam* jurisdiction over Defendant Domain Names.

Further, Plaintiff has complied with 15 U.S.C. § 1125(d)(2)(A)(ii), subsections (aa) and (bb). In that regard, on May 24, 2024, Plaintiff filed a Motion for Service by Publication. Dkt. No. 5. The Court granted the motion on the same day, and ordered Plaintiff to publish a copy of the Order in *The Washington Post* within fourteen (14) days of the Order. Dkt. No. 7. Plaintiff arranged for a copy of the Order to be published in *The Washington Post* on June 4, 2024. Dkt. No. 8. Accordingly, the undersigned finds that Plaintiff satisfied its due diligence requirements pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii).

Venue is also proper in this district under 15 U.S.C. § 1125(d)(2)(C). For an *in rem* action, the domain name(s) "shall be deemed to have [their] situs" in the judicial district where the "registrar, registry, or other domain name authority" is located. 15 U.S.C. § 1125(d)(2)(C). Here, the principal place of business of the top-level domain name registry for the .com and .net domain names, Verisign, is located in Reston, Virginia, which is in this district. Compl. ¶ 72; Mem. in Supp. of Mot. for Default J. at 6-7. Further, the principal place of business of the top-level domain name registry for the .org domain names, Public Interest Registry, is also located in Reston, Virginia, which is in this district. Mem. in Supp. of Mot. for Default J. at 6-7.

## B. Service of Process

The Court must be satisfied that the defaulting party has been properly served. Federal Rule of Civil Procedure ("FRCP") 4(n)(1) provides that "the court may assert service over property if

authorized by a federal statute" and "notice to claimants of the property is given as provided in the statute or by serving a summons under this rule." In this case, 15 U.S.C. § 1125(d)(2)(B) states that satisfying the due diligence requirements outlined in § 1125(d)(2)(A)(ii) shall constitute service of process. Because the Plaintiff has fulfilled the due diligence requirements outlined above, the undersigned recommends finding that service of process has been proper as to each of the sixty-two (62) Defendant Domain Names.

### C.  Grounds for Default Judgment

On May 3, 2024, Plaintiff filed its Complaint against the Defendant Domain Names. Dkt. No. 1. On May 24, 2024, Plaintiff filed its Motion for Service by Publication. Dkt. No. 4. The Court granted the motion, and on June 4 2024, Plaintiff published a copy of the Order in *The Washington Post*. *See* Dkt. No. 8.

Plaintiff filed a Request for Clerk's Entry of Default on July 19, 2024, and the Clerk of the Court entered default on July 22, 2024. Dkt. Nos. 9-10. On August 12, 2024, Plaintiff filed its Motion for Default Judgment and accompanying memorandum in support of its motion. Dkt. Nos. 11-12. On September 13, 2024, a hearing on the Motion for Default Judgment was held before the undersigned. Dkt. No. 14. After Defendant failed to respond to the Complaint or Motion for Default Judgment, and failed to appear at the hearing, or otherwise defend this matter, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. *Id.*

### II. <u>EVALUATION OF PLAINTIFF'S COMPLAINT</u>

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." A defendant in default concedes the factual allegations of the complaint. *See,*

*e.g.*, *DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Default does not, however, constitute an admission of the adversary's conclusions of law and is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead, the Court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." *Id*.

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate Plaintiff's claims against the standards of Rule 12(b)(6) of the FRCP to ensure that the Complaint contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss). To meet this standard, a complaint must set forth "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

### III. <u>FACTUAL FINDINGS AND ANALYSIS</u>

#### Count I: Violation of the ACPA

To establish an ACPA violation, a plaintiff is required to show that (1) the plaintiff owns the protected mark, (2) the registrant(s) had a bad faith intent to profit from using the domain name, and (3) the domain name is identical or confusingly similar to, or dilutive of, the distinctive marks owned by plaintiff. *See* 15 U.S.C. § 1125(d)(1)(A); s*ee also People for Ethical Treatment of*

*Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). For the reasons set forth below, the undersigned finds that Plaintiff has established a violation of the ACPA.

### *1. Plaintiff Possesses a Valid and Protectable Mark.*

A necessary predicate to an ACPA action is that a plaintiff has a protectable interest in a trademark. *See* 15 U.S.C. § 1125(d)(1)(A).  A plaintiff's registration with the United Sates Patent and Trademark Office ("USPTO") is *prima facie* evidence of ownership of the mark and of the exclusive right to use the registered mark in commerce. *See* 15 U.S.C. § 1057(b).

The undersigned finds that Plaintiff has a protectable interest in the PRAGMATIC PLAY mark. Tamaris (Gibraltar) Limited, operating as Pragmatic Play, is a leading developer and provider of mobile and desktop casino games for the online gaming industry. Compl. ¶ 74. Pragmatic Play is the owner of four registered trademarks for PRAGMATIC PLAY, Reg. Nos. 6848492, 6890979, 7307616, and 7330411, including both the word mark and composite mark. Compl. ¶ 85; Dkt. No. 1, Exhibit No. 63. Ownership of these registrations entitles Pragmatic Play to a statutory presumption of exclusivity in the mark. *See* 15 U.S.C. § 1057(b). All of these registrations were filed on February 19, 2021, and are entitled to a priority date at least as early as that filing date. *See* Dkt. No. 1, Exhibit No. 63; 15 U.S.C. § 1057(c).

In addition, Pragmatic Play registered the domain name PragmaticPlay.com on October 29, 2014. Compl. ¶ 80. Pragmatic Play has used the PRAGMATIC PLAY mark as part of its domain name since 2015 to promote its gaming business. *See* Compl. ¶ 80. Moreover, since 2016, Pragmatic Play has been actively and continuously developing, offering, and supplying a wide range of games under the PRAGMATIC PLAY mark, including online slot games, live casino games, bingo, and virtual sports, to operators in various jurisdictions. Compl. ¶¶ 75, 78. The PRAGMATIC PLAY mark is often used as a word mark and displayed as plain text; however, at

times, the PRAGMATIC PLAY mark is displayed in a stylized form with a design, as shown below:



As a result of the use and widespread promotion of the PRAGMATIC PLAY marks, consumers have come to distinguish and recognize the legitimacy of Pragmatic Play's services. Compl. ¶ 81. As such, the inherently distinctive PRAGMATIC PLAY mark is also entitled to common law trademark rights based on its consistent and continuous use in commerce. Compl. ¶ 83; *Emergency One, Inc. v. Am. Fire Eagle Engine Co*., 332 F.3d 264, 267 (4th Cir. 2003) ("At common law, trademark ownership is acquired by actual use of the mark in a given market.").

Given Plaintiff's ownership and continuous use of the trademarks and the PragmaticPlay.com domain name, the undersigned finds that Plaintiff has a protectable interest in the PRAGMATIC PLAY marks.

### 2. Defendants Acted in Bad Faith with Intent to Profit from Using the Defendant Domain Names

To establish an ACPA violation, a plaintiff also is required to prove that the registrant(s) had a bad faith intent to profit from using the domain name(s). 15 U.S.C. § 1125(d)(1)(A); *see also People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). In determining whether a defendant acted in bad faith, a court may consider several factors, including, but not limited to:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

15 U.S.C. § 1125(d)(1)(B)(i); *see People for Ethical Treatment of Animals*, 263 F.3d at 368–69.

Courts need not address all nine factors and only need to discuss the factors relevant to the "unique circumstances of th[e] case." *Volvo Trademark Holding AB v. Volvospares.com*, 703 F.Supp.2d 563, 567 (E.D. Va. 2010); *see Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 268 (4th Cir. 2001).

The undersigned finds that Plaintiff has established that registrant possessed the requisite bad faith intent to profit from the use of Defendant Domain Names. Under the facts and circumstances of this case, the undersigned finds factors I, II, III, IV, V, and VII particularly relevant in determining whether Defendants acted in bad faith.

There is no indication that the registrant of each of the Domain Names has any intellectual property rights in the respective Domain Names, nor that the Domain Names include the registrant's legal name, pursuant to factors I and II. *See* Mem. in Supp. of Mot. for Default J. at 14; 15 U.S.C. § 1125(d)(1)(B)(i)(I)-(II). Further, pursuant to factor III, for many of the Defendant Domain Names, the record evidence does not demonstrate bona fide use of the marks to offer goods and services, but instead, shows intentional copying of Pragmatic Play's intellectual property to mislead consumers. 15 U.S.C. § 1125(d)(1)(B)(i)(III). For instance, at least twenty-six (26) of the Defendant Domain Names have been used to offer and/or promote online gaming services that are identical and/or similar and/or related to Pragmatic Play's gaming services. Compl. ¶¶ 8, 14-15, 17-18, 20-21, 25-30, 32, 34, 36, 45, 47-48, 50, 52-53, 56-57, 60, and 65. Pursuant to factor IV, the registrant(s) also have not engaged in bona fide noncommercial or fair use of the PRAGMATIC PLAY mark in a website accessible under the Defendant Domain Names. Compl. ¶ 95; 15 U.S.C. § 1125(d)(1)(B)(i)(IV). Additionally, pursuant to Factor V, the registrant(s) demonstrated an intent to divert customers from PragmaticPlay's website in such a way that could harm the goodwill of the PRAGMATIC PLAY mark. *See* Compl. ¶¶ 86-92, 96-97; 15 U.S.C. § 1125(d)(1)(B)(i)(V).

Factor VII further supports a finding of bad faith. According to the WhoIs records for the Domain Name, Defendant Domain Names used a service to affirmatively conceal the registrants' identifying information. Compl. ¶¶ 5-67; 99. That is, the contact information for the registrant(s)

of the Defendant Domain Names is misleading, in that the registrant(s) chose to conceal their identifying information for all of the Defendant Domain Names. *See* Compl. ¶¶ 6-67; *id.* Dkt. No. 1, Exhibits Nos. 1-62; 15 U.S.C. § 1125(d)(1)(B)(i)(VII); Mem. in Supp. of Mot. for Default J. at 15; *Montblanc-Simplo GmbH v. AChatStyloMontblanc.com*, No. 1:13-cv-1013, 2014 WL 107395, at *6 (E.D. Va. Jan. 3, 2014) (finding bad faith where true identity and correct service address have not been provided). Accordingly, Defendants have intentionally failed to maintain accurate contact information for the Domain Names. *See* 15 U.S.C. § 1125(d)(1)(B)(VII). Based on the foregoing factors, the undersigned finds that Plaintiff has sufficiently demonstrated Defendants' bad faith in using the Defendant Domain Names.

### 3. The Domain Names are Confusingly Similar or Identical to the Distinctive Mark

The undersigned finds that Plaintiff has sufficiently demonstrated that the Defendant Domain Names are confusingly similar to Plaintiff's Mark. 15 U.S.C. § 1125(d)(a)(A)(ii); *see also People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). "In assessing whether a mark is confusingly similar, the alleged infringing domain name does not need to be identical to the registered mark. Rather, the 'dominant or salient portions' of the domain name must be sufficiently similar." *Volvo Trademark Holding AB v. Volvospares.com*, 703 F. Supp. 2d 563, 568 (E.D. Va. 2010) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.,* 43 F.3d 922, 936 (4th Cir. 1995)).

Here, each of the Defendant Domain Names incorporate either the precise PRAGMATIC PLAY mark or obvious typographical errors thereof (e.g., PRAGMATIC-PLAYS.com) which do not serve to distinguish the mark. *See* Compl. ¶¶ 6-67, 86; *Fox News Network, LLC v. xofnews.com*, 2021 WL 5042995, at *5 (E.D. Va. Apr. 6, 2021) (finding that typosquatting "satisfies the confusingly similar requirement"). For those of the Defendant Domain Names that incorporate

additional elements, those elements are either facially random (e.g., "DK11" or "GS10") and therefore do not distinguish from Pragmatic Play's mark, or alternatively, the elements actually refer to PragmaticPlay and/or its services (e.g., "slot" or "casino") and therefore result in confusion. *See Volvo Trademark Holding AB v. Volvospares.com*, 703 F. Supp. 2d 563, 568 (E.D. Va. 2010) (noting that the addition of generic terms does not diminish confusing similarity). Accordingly, the undersigned finds that the Defendant Domain Names are "identical or confusingly similar" to the distinctive PRAGMATIC PLAY mark, as required by ACPA. *See* 15 U.S.C. § 1125(d)(1)(A)(ii)(I); *Agri-Supply Company, Inc. v. Agrisupply.Com*, 457 F. Supp. 2d 660, 663 (E.D. Va. Sept. 13, 2006) (holding the domain name was confusingly similar because it was "virtually identical" to plaintiff's trademark).

### Relief

In this *in rem* action, Plaintiff seeks an order: (i) entering Judgment against the Defendant Domain Names on Count I of the Complaint; (ii) directing VeriSign, Inc. and Public Interest Registry to change the registrars of record for the Defendant Domain Names to Plaintiff's domain name registrar of choice, SafeNames Ltd.; and (iii) directing SafeNames Ltd. to take all necessary steps to have Plaintiff listed as the registrant for the Defendant Domain Names. Mot. for Default J.; *see* Dkt. No. 11. Pursuant to 15 U.S.C. § 1125(d)(1)(C), "[i]n any civil action involving the registration, trafficking, or use of a domain name . . . a court may order . . . the transfer of the domain name to the owner of the mark." This Court has previously ordered the transfer of domain names where those domain names infringe on valid trademarks. *See Int'l Bancorp, LLC*, 129 F. Supp. 2d at 490. Given that Plaintiff has established a violation of the ACPA, the undersigned recommends granting Plaintiff's requested relief.

## IV. RECOMMENDATION

For the reasons stated above, the undersigned Magistrate Judge recommends entry of default judgment in favor of Plaintiff and against Defendant Domain Names, as to Count I of the Complaint. The undersigned further recommends entering an order directing VeriSign, Inc. and Public Interest Registry to change the registrars of record for the Defendant Domain Names to Plaintiff's domain name registrar of choice, SafeNames Ltd., and directing SafeNames Ltd. to take all necessary steps to list Plaintiff as the registrant for each of the sixty-two (62) Defendant Domain Names.

## V. NOTICE

**By means of the Court's electronic filing system and by mailing a copy of this Report and Recommendation to defendants at their address for service of process, the parties are notified as follows. Objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.**

_____
/s/

December 23, 2024                                              Ivan D. Davis
Alexandria                                                    United States Magistrate Judge

14